UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LARRY ALBERT BROWN** and
**ALLYSON L. BROWN**,

Debtors.

Case No. **10-60467-13**

# MEMORANDUM of DECISION

At Butte in said District this 14th day of October, 2010.

In this Chapter 13 bankruptcy, after due notice, the Court held a hearing on September 20, 2010, in Billings on Debtors' "Amended Motion for Order to Avoid Lien of Second Trustee Deed Holder Altana Federal Credit Union" filed April 23, 2010, at dkt. 19. At the hearing, Mark S. Hilario of Billings, Montana represented Debtors; and Margy Bonner of Billings, Montana, represented Altana Federal Credit Union ("Altana"). Real estate appraisers David Moen and Wendi Bruner testified as did the Vice President of Lending at Altana, Royal Carireau. The Court admitted Debtors' Exhibits 1 and 2 and Altana's Exhibits A, B and D into evidence. At the conclusion of the parties' cases-in-chief, the Court took the matter under advisement. This Memorandum of Decision sets for the Court's findings of fact and conclusions of law.

BACKGROUND

Debtors' built their home in 2007. Debtor's home is located on 1.032 acres. Debtors' home is 5,090 square feet, with 2,702 square feet above ground and 2,388 below ground. Debtors' home has seven bedrooms and at least 6 of the bedrooms have walk-in closets. The master bedroom has his and her walk-in closets and a see-through fireplace. Debtors' basement has 9 foot

1


ceilings and the plumbing and lighting fixtures in Debtors' home are considered high-end.

Debtors' home is located to the south of Billings, between Billings and Laurel, off a frontage road in an area referred to as the I-90 corridor. The property surrounding Debtors' home is a mixture of residential and commercial property. The real estate appraisers agreed that Debtors' home is located between communities, i.e. Billings and Laurel, in a low population density area. Wendi Bruner testified that Debtors' home is approximately 10 to 15 minutes from downtown Billings. It appears that no homes have sold in Debtors' immediate area since approximately 2005.

Altana originally funded the construction of Debtors' home. Debtors represented to Altana in 2007 that their construction costs would or did total $526,850.00. In June of 2008, presumably after completion of Debtors' home, Altana sold $417,000 of Debtors' loan to PHH Mortgage. Altana took a second position loan against Debtors' home in the amount of $85,000. Royal Carireau ("Carireau") testified that dividing the loan into a first and second loan was intended to help Debtors because Debtors avoided the expense and hassle of dealing with a jumbo loan.

THE APPRAISERS

<u>Wendi Bruner</u>

Wendi Bruner ("Bruner") is a real estate appraiser who appraises residential and small income properties. Bruner appraised Debtors' home in 2007. The indicated value of Debtors' home in 2007 using the cost approach method was $525,526. The indicated value using the sales comparison approach was $530,000. Considering the foregoing and "[b]ased on a complete visual inspection of the interior and exterior" of Debtors' home, Bruner concluded as of September 13, 2007, that Debtors' home had a market value of $530,000.

After March 15, 2010, when Debtors' filed their bankruptcy petition, Altana asked Bruner to do a followup appraisal of Debtors' home. Bruner notes in her appraisal that "few comparable sales were available. However, this market area is currently being built up with mid to upper quality houses on small acreages on the outskirts of the City of Billings." Bruner's appraisal shows that Bruner assigned a value of $60,000 to Debtors' raw land. Bruner testified that Debtors' paid $45,000 for their lot, but the most recent sale of a lot in Debtors' neighborhood was for $59,000. Bruner then multiplied Debtors' above ground square footage of 2,664 by $118.40 to reach a cost of $315,418.00 for Debtors' above ground living area. Bruner multiplied 2,226 square feet by $48.60 to reach of a cost of $108,184 for Debtors' basement. To the aforementioned amounts, Bruner added $28,800 for driveways, porch, covered patio and landscaping, $17,952 for Debtors' garage and $15,500 for as-is site improvements. Using the Marshall & Swift cost approach, Bruner calculated that the indicated value of Debtors' home as of May 17, 2010, was $545,854.

Bruner also used the sales comparison approach and after examining six identified properties, concluded that Debtors' home had an indicated value of $545,000. Bruner proceeded to place the most emphasis on the market approach because "it best represents the actions of typical buyers and sellers in the market place and is supported by the cost approach[,]" and concluded that as of May 17, 2010, Debtors' home had a market value of $545,000.

<u>David Moen</u>

David Moen ("Moen") is also a real estate appraiser. Moen did a retrospective appraisal of Debtors' home and concluded that the "defined value" of Debtors' home was $404,300 as of March 15, 2010. Moen testified that he asked Debtors for their construction costs, but Debtors

3

informed Moen that they could not recall their construction costs.[1] In his appraisal, Moen lists various improvements to Debtors' home, including concrete and Cambria countertops, jetted tub, jetted tub/shower, gas fireplaces, triple dual sinks, water softener, fan/hood combo, small island with prep sink, center island, walk-in closets with organizers, tile, dual laundry with cabinets and sink, small theater, ceiling fans, upper bonus room, synthetic deck, finished garage with openers, partial landscaping (front sprinklers, new lawn seed), corner lot. Moen agrees with Bruner that Debtors' raw land has a value of $60,000. However, Moen concluded that under the cost approach, Debtors' home had a value of $484,400.

Moen also concluded that the derived market value range for Debtors' home was $393,200 to $444,100.00. Moen then determined that the "weighted adjusted comparable sale 5 price" was $404,300, which was the "defined value" Moen assigned to Debtors' home. Moen contends that he examined 8 comparable properties under the sales comparison approach. Moen looked for ranchette homes or homes on acreage with low density. In reviewing Moen's appraisal, the Court sees pictures, addresses, sales dates and sales prices of 8 comparable properties. The Court, however, can find a detailed analysis of only 5 comparable properties.

Moen testified that he did not use the comparable properties used by Bruner. Moen testified that many of the properties identified as comparable by Bruner were in Billings and had paved streets and city services. Moen explained that Debtors' home has paved roads nearby on the frontage road but not to the property. Moen explained that he tried to use the logic of similar size and location and tried to avoid properties with city services.

Moen testified that he was aware of one recent listing on the same block as Debtors' home.

---

[1] Moen's appraisal states: "No project cost data was provided[.]"

4

The listing price for that home, which did not have a basement, was $399,900. Moen heard the sellers received an offer that was under the list price. The offer was declined and the house was taken off the market.

Moen noted a general decline in Debtors' Multiple Listing Service area during the first two quarters of 2010. Moen explained that the decline was out of context and he could not speculate whether the decline applied to Debtors' home. Moen clarified that his retrospective appraisal had an effective date that was at the end of a particularly hard winter and that in general, the Billings real estate market has seen an increase of approximately 4%.

Bruner countered Moen's appraisal, explaining that she sought similar quality while Moen focused on location. Bruner sought to use comparable sales with similar orientation to downtown Billings. Bruner looked for quality homes on larger lots. Bruner also criticized Moen's use of three comparable sales from Laurel, Montana and testified that she did not consider it appropriate to use large acreage properties as comparables, such as Moen did.[2] Bruner confined her comparables to 1 acre lots or less.

## APPLICABLE LAW

Debtors' seek to avoid Altana's lien, arguing their home has a value of $406,400.00. PHH Mortgage Corporation holds a first position lien against Debtors' home in the amount of $439,306.54. Altana holds a second position lien against Debtors' home in the amount of $86,476.55. The Debtors' contend that Altana's lien is wholly unsecured and can be avoided or "stripped" under *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002). Altana counters that the value of Debtors' home exceeds $406,400.00, and as a consequence, Altana is not a wholly unsecured

---

[2] Moen's comparable sale 3 was on 10 acres and Moen's comparable sale 8 was on 11.23 acres.

creditor subject to the ruling in *Zimmer*, and that a portion or all of Altana's mortgage claim is secured and thus protected under *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and 11 U.S.C. § 1322(b)(2).

The Bankruptcy Code expressly provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . . ." 11 U.S.C. § 1322(b)(2). In *Nobelman*, the Supreme Court confirmed that § 1322(b)(2) modification is not available when a § 506(a) valuation establishes that a lender's claim is partially secured. After *Nobleman*, however, the Ninth Circuit Court of Appeals, along with the majority of other circuit courts, held that the anti-modification protection of § 1322(b)(2) does not prohibit modification of the rights of a junior creditor holding a lien on a debtor's primary residence where senior liens exceed the value of the residence such that the junior creditor is wholly unsecured. *Zimmer*, 313 F.3d 1220.[3]

## DISCUSSION

In this case, Debtors seek to modify Altana's rights and request that the Court determine the secured status of Altana's claim pursuant to § 506(a). This requires the Court determine the market value of Debtors' home "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). Market value is "'[t]he most probable price which a Residence should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably

---

[3] Although not an issue in this case, the Court does highlight that "an unintended consequence of 'strip off' is the impact that changing a claim's 'status' from secured to unsecured can have on chapter 13 debtor eligibility under § 109(e)." *In re Smith*, 2010 WL 3096573 (9th Cir. BAP July 8, 2010). *See also In re Scovis*, 249 F3d 975 (9th Cir. 2001).

and assuming the price is not affected by undue stimulus.'" *United States ex rel. Farmers Home Admin. v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 657 (9th Cir. BAP 1994), *aff'd*, 85 F.3d 1415 (9th Cir.1996), *cert. den.* 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607(1997) (quoting *In re Stockbridge Properties I, Ltd.*, 141 B.R. 469, 470 n.1 (Bankr.N.D.Ga.1992)).

The outcome of Debtors' pending motion turns on the competing appraisals of Moen and Bruner. Both Moen and Bruner are experienced appraisers. However, after carefully reviewing the appraisals, the Court concludes that Bruner's appraisal is more comprehensive and convincing. First, Bruner provided a detailed analysis of her cost approach. Moen, on the other hand, provided little data to support his cost value of $484,400. In addition, the Court is persuaded by Bruner's use of comparable properties with similar land size and interior finishes. The Court is not convinced that properties in Laurel, Montana provide an accurate indication of value for properties in the Billings area. Therefore, the Court concludes that the value of Debtors' home is $545,000.

Because Altana's claim is wholly secured at this time, the Court agrees with Altana that Debtors' amended motion to avoid Altana's lien fails. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtors' Amended Motion for Order to Avoid Lien of Second Trustee Deed Holder Altana Federal Credit Union filed April 23, 2010, at docket entry no. 19, is DENIED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana